**IN THE COURT OF APPEALS OF IOWA**

No. 25-1072
Filed September 17, 2025

**IN THE INTEREST OF H.M., H.M., L.M., L.M., L.M., R.H., and T.P.,**
**Minor Children,**

**S.H., Mother,**
        Appellant,

**T.P., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, for appellant mother.

Eric A. Checketts of Checketts Law, PLC, Glenwood, for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Ryan M. Dale, Council Bluffs, guardian ad litem for T.P.

Norman L. Springer Jr. of McGinn, Springer & Noethe PLC, Council Bluffs, attorney for all minor children and guardian ad litem for H.M., H.M., L.M., L.M., L.M., and R.H.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of the mother and fathers to seven children.  The mother of all children and the father of the oldest child separately appeal.[1]  Both challenge the statutory grounds for termination and argue termination is not in the best interest of their respective children.[2]

We conduct a de novo review of orders terminating parental rights.  *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).  The juvenile court's factual findings do not bind us, but we give them weight, especially in assessing witness credibility.  *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exception should be applied to preclude termination.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).  But we do not address any step not challenged by a parent.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  We address each parent's appeal in turn.

**I.    The Father**

The juvenile court terminated the father's parental rights to his child under Iowa Code section 232.116(1)(e), (f), and (j) (2025).  When the juvenile court terminates parental rights on multiple statutory grounds, we may affirm based on any ground supported by the record.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

---

[1] As no other fathers appealed, all references to "the father" in this opinion refer to the oldest child's father.

[2] Both parents also attempt to challenge whether the Iowa Department of Health and Human Services made reasonable efforts toward reunification.  However, a reasonable-efforts challenge must be raised to the juvenile court prior to the termination hearing.  *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).  Because neither parent raised a reasonable-efforts challenge prior to the termination hearing, their respective claims are not preserved for our review.  *See id.*

We choose to focus on section 232.116(1)(f), which permits termination when the State proves: (1) a child is four years old or older; (2) the child has been adjudicated in need of assistance; (3) the child has been removed from the physical custody of a parent for at least twelve of the last eighteen months; and (4) the child cannot be returned to the parent's custody at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting the statutory phrase "at the present time" to mean at the time of the termination hearing).

The father only challenges the fourth element, whether the child could be returned to his custody. But in so doing, he only argues that the child could be returned to him "within a reasonable period of time." That is not the applicable standard under section 232.116(1)(f)(4). Rather, the question is whether the father could safely take custody of the child at the time of the termination hearing. *See A.S.*, 906 N.W.2d at 473. And the father was incarcerated at the time of the termination hearing with his earliest opportunity for parole coming in January 2027 and a projected release date in 2045. So, it is apparent that the child could not be placed in the father's custody at the time of the termination hearing. As such, the State proved a statutory ground for termination as to the father.

The father also argues that termination is not in the child's best interests. In assessing the father's argument, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). The father asserts termination is not in the child's best interests due to their close bond. We

consider the father's bond with the child to the extent its severance would impact the child's mental and emotional condition and needs. *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025).

There is little doubt that termination will impact the child's emotional condition and needs. The child testified at the termination trial that she loves her father and wants him "to have a second chance." But the reality is that the father is not able to take on the everyday duties required of a parent due to his incarceration.[3] Termination of his parental rights will allow someone else to step into that role and provide the child with necessary stability and structure that the father simply cannot provide. We ultimately agree with the juvenile court that termination of the father's rights best serves the child's interests.

## II.    The Mother

The juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(e), (f), (h), and (*l*). We elect to address the statutory grounds for termination under section 232.116(1)(h) with respect to the younger children and section 232.116(1)(f) with respect to the older children.[4] *See A.B.*, 815 N.W.2d

---

[3] At the termination hearing, the father suggested the child be placed in a guardianship with one of three paternal relatives, but the child had never met any of them. The father does not seek establishment of a guardianship as an alternative to termination on appeal.

[4] The State filed identical petitions for termination in the case files for each child. Those petitions did not break down with particularity what statutory grounds for termination it sought to be applied to each child. The juvenile court followed this practice, as it simply stated that the petition to terminate the mother's rights was granted "pursuant to section[] 232.116(1)(e), (f), (h)[,] and (*l*)" without specifying what grounds apply to the mother's rights to each child. We note that section 232.116(1)(f) and (h) apply to children of differing ages, so both cannot apply to the same child. *Compare* Iowa Code § 232.116(1)(f)(1), *with id.* § 232.116(1)(h)(1). As a suggestion for future cases, it is best practice for the State and the juvenile court to specify which grounds apply to each child.

at 774 (recognizing an appellate court may affirm on any one ground found by the juvenile court). These two grounds for termination are similar. Both require the child to be previously adjudicated as in need of assistance and for the court to find the child could not be returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f), (h). They differ only with respect to the age of the child at issue and the length of time the child must be removed from the parent's custody. *Compare id.* § 232.116(1)(f), *with id.* § 232.116(1)(h). Under these statutory grounds, the mother only challenges whether the children could be safely returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4), (h)(4); *A.M.*, 843 N.W.2d at 112.

This case began in September 2023 when the Iowa Department of Health and Human Services learned that the oldest child, then just eleven years old, was left for several days to serve as the sole caretaker for her six younger siblings, which included two infants. Local police checked on the home and discovered there was no functioning plumbing, mold throughout the residence, and human excrement in several rooms. The mother was arrested and charged with child endangerment. The children were placed in protective custody, and a no-contact order was issued preventing the mother from contacting them. Eventually, the no-contact order was modified to permit contact between the mother and children at the discretion of the department.

But since that time, the mother has not made any sustained progress. She tested positive for methamphetamine twice and failed to test ten of the nineteen times she was offered drug testing, including the seven most recent testing

opportunities.[5] The mother entered a residential program intended to address her substance-use and mental-health issues and participated in that for several months before she was discharged for failing to meet the program's behavioral expectations. Since her discharge from the program, the mother was ordered to complete a new substance-use evaluation and a "full-scale psychological evaluation, including an IQ test and parenting assessment." She has not done so.

About a month before the termination hearing, the mother moved to a home in Elkhorn, Nebraska. There, she lives with an individual who suffered a stroke and requires care services as a dependent adult. The mother explained that she, along with her godmother, are paid caretakers for the individual. The oldest child's guardian ad litem is the only other person involved in these proceedings who has visited the Elkhorn home. After his visit, he contacted the adult dependent hotline with concerns for the individual's wellbeing.

Given the mother's lack of stability and lack of meaningful progress, we conclude that the children could not be safely returned to her custody at the time of the termination hearing. Accordingly, the State established statutory grounds for termination of the mother's rights to all seven children.

The mother also argues termination is not in the children's best interests, citing her bond with the children. Again, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *See* Iowa Code § 232.116(2). And we consider the

---

[5] Two tests were negative for all tested substances. The remaining tests were positive for marijuana or marijuana metabolite.

mother's bonds with the children to the extent that severance of those bonds would impact the children's mental and emotional condition and needs. *See L.A.*, 20 N.W.3d at 535.

We understand that the oldest child stated that she loves her mother "very much" and wants to return to her mother's custody. But the bond between them is not healthy, and its severance is necessary. *See In re K.M.*, No. 21-1036, 2021 WL 4593210, at *2 (Iowa Ct. App. Oct. 6, 2021) (describing a parent-child bond as unhealthy when an elementary-school aged child intervened "in adult situations to protect or defend the mother"). And we reject the mother's contention that her rights to the oldest child should not be terminated because the child has been placed in various shelters or residential behavioral facilities and does not have an adoptive home lined up. It is quite likely that many of the child's behavioral issues stem from the mother's neglect and treatment. But regardless of the cause of the child's behavioral issues, there is clear and convincing evidence that termination is necessary to protect the child from the mother.

Given the mother's failure to appreciate the harm she has caused to all the children and her failure to make any meaningful progress, she is not a safe person to be around any of the children. Termination of her parental rights to all seven children is necessary to provide for the children's safety and their physical, mental, and emotional conditions and needs. In short, termination of the mother's rights is in the best interest of all the children.

**AFFIRMED ON BOTH APPEALS.**